UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT ANTHONY HIGH, | Case No. 2:11-cv-00891-MMD-VCF |
| Petitioner, | |
| v. | ORDER |
| DWIGHT NEVENS, et al., | |
| Respondents. | |

This represented habeas matter comes before the Court on petitioner's motion (dkt. no. 32) for leave to conduct discovery under Rule 6(a) of the Rules Governing Section 2254 Cases.

## I.      BACKGROUND

Petitioner Robert Anthony High seeks to set aside his 2009 Nevada state conviction, pursuant to a jury verdict, of one count of first-degree kidnapping, six counts of lewdness with a child under 14, one count of sexual assault of a minor under 14, and one count of administration of a drug to aid in the commission of a felony.  He is sentenced to multiple term and life sentences, including two consecutive life sentences under a sentence structure pursuant to which he will not be eligible for a parole outside an institution for at least 25 years.  He challenged the judgment of conviction on direct appeal and in two state post-conviction petitions.  The *pro se* petitions were denied without appointment of counsel, without discovery, and without an evidentiary hearing.

## II.     GOVERNING LAW

Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ."

In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule.  520 U.S. at 904 & 909. In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."   394 U.S. at 300 (emphasis added).   In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery.  520 U.S. at 908 & 909.

The Ninth Circuit, consistent with *Bracy* and *Harris*, accordingly has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide support for a claim.  *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997).  *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), *reversed on other grounds*, *District Attorney's Office v. Osborne*, 557 U.S.52 (2009) (in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit reinforced the point that a court should allow discovery that, as emphasized by the Court of Appeals, only *"may establish"* a factual basis for the petitioner's claim).

## III.   DNA EVIDENCE – DISCOVERY OF POLICE CRIME LAB RECORDS

In Ground 2, petitioner alleges, *inter alia*, that he was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments when counsel failed to present expert testimony challenging the reliability of the police lab's DNA evidence.

1   High, in particular, makes the following factual allegations, which are accepted as

2   true solely for purposes of the present review.[1]

3   The State relied heavily on DNA evidence to prove its case.

4   At the relevant time, Julie Marschner was a forensic scientist with the crime lab

5   for the Las Vegas Metropolitan Police Department ("Metro"). On April 27, 2007,

6   Marschner prepared a forensic laboratory report setting forth the Metro crime lab's

7   analysis of the DNA evidence in High's case.

8   As early as January 3, 2008, defense counsel was aware that there were

9   "serious mistakes" in the April 27, 2007, DNA report.  Counsel did not engage an expert

10   to review the Metro crime lab's quality control procedures generally and as applied to

11   High's case, despite funds having been approved for defense experts.

12   The case came on for trial on October 15, 2008, and Marschner testified nearly

13   two weeks into the trial on October 28, 2008, the ninth trial day.  Marschner testified that

14   a couple of weeks prior it had been brought to her attention that there were

15   "typographical errors" in the April 27, 2007, report.   These "typographical errors"

16   included referring to a DNA sample of the victim instead as a DNA sample of High.

17   Marschner issued a corrective report on October 15, 2008, the same day that the trial

18   had begun.  Additional errors were found, however, including again incorrectly referring

19   to labeled items and also incorrectly stating that items were tested that were not tested.

20   Marschner therefore issued a second corrective report on October 24, 2008, well into

21   the trial and only four days before her testimony.

22

23

24   [1]See Amended Petition, dkt. no. 21, at 22-28. The Court makes no credibility

25   findings or other factual findings regarding the truth or falsity of the allegations in the federal petition, which are assumed to be true for the present review only, or of other factual assertions by the parties.  The Court summarizes same solely as background to

26   the issues presented, and it does not summarize all such material.  No statement of fact made in describing allegations, statements, testimony or other evidence in federal or

27   state court constitutes a finding by this Court.  Accordingly, the absence of a preface to a statement such as "petitioner alleges that" or "according to the amended petition"

28   does not signify that the Court is adopting an allegation or statement as its own.

1   Defense counsel cross-examined Marschner on the errors in the reports, and he
2   brought out an additional error where evidence was incorrectly referenced in the second
3   corrected report.  Marschner repeatedly characterized these mistakes as mere
4   typographical errors.  Not having retained an expert to challenge the DNA evidence, the
5   defense presented no expert testimony challenging Marschner's effort to minimize the
6   errors as mere typographical errors and otherwise challenging the reliability of the lab's
7   procedures both generally and in High's case.

8   Marschner's errors in High's case were not an isolated occurrence.

9   On April 24, 2007, the same day that Marschner tested the evidence in High's
10  case, she tested DNA evidence in what would become a murder prosecution brought
11  against Bryan Crawley.  When Marschner testified in the Crawley case in November
12  2008, she acknowledged that she had made multiple errors in her report of her testing
13  work.  These errors, once again, were brought to her attention a couple of weeks prior
14  to the trial, in this instance by an employee of the district attorney. Marschner's
15  supervisor then re-reviewed her work and found additional mistakes, bringing the total
16  to ten in all.  Marschner's errors in the Crawley case included errors similar to her errors
17  in High's case, such as incorrectly referring to labeled samples.

18  The errors in the Crawley case garnered newspaper attention, and the Metro
19  crime lab began auditing prior work.  Marschner testified in the Crawley case that "we're
20  now going back and auditing 10 percent of the cases that have been done in the last
21  three years to see if this is an issue in other case."

22  Also on April 24, 2007, the same day that Marschner tested the evidence in
23  High's case, she tested DNA evidence in what would become a sexual assault
24  prosecution brought against Cody Leavitt.  In October 2008, Leavitt entered a guilty
25  plea, maintaining that he had no recollection of the event due to being intoxicated but
26  that he was entering a plea because of the DNA evidence.  On appeal, appellate
27  counsel retained Dr. Christie Davis, Ph.D., a molecular biologist with expertise in DNA
28  testing procedures.  It appears that during testing, a vial broke and spilled a sample

1    from another case onto samples in a centrifuge.  According to Dr. Davis, the lab notes

2    from the incident did not adequately explain what samples were involved and what

3    procedures were followed to address the contaminated samples.

4        Marschner's work in each case – High, Crawley and Leavitt – was given a

5    "second read review" by a colleague.  In both the High and Leavitt cases, Metro lab

6    technician Kristina Paulette was Marschner's second read reviewer.  According to press

7    reports, Paulette was fired in May 2011 after she was caught allegedly covering up a

8    mistake made during the process of analyzing DNA evidence. According to press

9    reports of what the police related, Paulette allegedly denied making a mistake when

10   confronted with the alleged mistake.

11       In the present case, federal habeas counsel has retained Dr. Christie Davis, the

12   same molecular biologist who was retained for the Leavitt appeal.  Dr. Davis has

13   provided counsel a preliminary expert report extensively detailing alleged deficiencies in

14   the Metro crime lab's operations and forensic work based on the information currently

15   available.[2]

16       In the present discovery motion, petitioner seeks discovery of Metro crime lab

17   files that will enable Dr. Davis to conduct a complete review of the crime lab procedures

18   employed in High's case.[3]

19       Petitioner alleges that defense counsel rendered ineffective assistance when

20   counsel failed to secure expert assistance that would have enabled defense counsel to:

21   (a) effectively challenge Marschner's testimony on cross-examination at trial; and (b)

22   present expert testimony directly challenging the reliability of the State's DNA evidence.

23   He seeks the discovery requested to show the full effect such assistance would have

24   had.

25

---

26       [2]See Amended Petition, dkt. no. 21, at 24-26 & 28 (outline of preliminary findings
     and opinions).

27       [3]See Motion for Leave to Conduct Discovery, dkt. no. 32, at 7, ¶ 1 (description of
28   requested subpoena duces tecum to the crime lab).

1    It appears to the Court that petitioner has presented "specific allegations . . .

2   [that] show reason to believe that the petitioner may, if the facts are fully developed, be

3   able to demonstrate that he is . . . entitled to relief" on Ground 2.

4    Respondents contend that the "claim was fully explored at trial" and that

5   petitioner "fails to demonstrate a nexus between the allegedly exhausted claim and the

6   requested evidence."[4] The Court is not persuaded.  Merely because defense counsel

7   cross-examined Marschner at trial does not establish that the claim of *ineffective*

8   *assistance of counsel* alleged in Ground 2 was fully explored at trial.  The gravamen of

9   Ground 2 instead is that defense counsel neither adequately cross-examined

10  Marschner at trial nor adequately confronted her testimony with other evidence because

11  he did not retain expert assistance.  That claim clearly was not fully explored at trial in

12  the state proceedings.  Petitioner further has clearly – and extensively – demonstrated a

13  nexus between the discovery sought and the claim alleged in Ground 2.

14   Respondents further rely on the holding in *Cullen v. Pinholster*, 131 S.Ct. 1388

15  (2011), that "review under § 2254(d)(1) is limited to the record that was before the state

16  court that adjudicated the claim on the merits."  131 S.Ct. at 1398.  Respondents posit

17  that "to show good cause High must demonstrate, in addition to any other required

18  showing, that the documents he seeks to obtain can be considered . . . under

19  *Pinholster*." They maintain that petitioner's allegation that Ground 2 is exhausted

20  necessarily alleges that the claim has been adjudicated on the merits.  Respondents

21  contend that he therefore must "demonstrate what evidence he could obtain that would

22  not place his claims in violation of *Pinholster*."  In this same vein, respondents further

23  contend that *Pinholster* bars petitioner from relying in the first instance in the motion

24  itself upon evidence not presented to the state courts, such as Dr. Davis' report, in

25  seeking to establish good cause for discovery under Rule 6(a).  Respondents thereby

26  apparently would preclude a petitioner from ever presenting even the facts necessary to

27

28
_____

[4]Dkt. no. 33, at 4.

1  attempt to show that further factual development is warranted any time that a petitioner

2  alleges in a federal petition that a claim is exhausted.[5]

3        The Court again is not persuaded.

4        The Supreme Court expressly declined to decide in *Pinholster* "whether §

5  2254(e)(2)  prohibited the District Court from holding the evidentiary hearing or whether

6  a district court may ever choose to hold an evidentiary hearing before it determines that

7  § 2254(d) has been satisfied."  131 S.Ct. at 1411 n.20.  *A fortiori*, the Supreme Court

8  made no holding in *Pinholster* as to whether a district court may grant leave for

9  discovery before it determines whether § 2254(d)(1) has been satisfied on the merits.

10  Most certainly, the Supreme Court made no determination in *Pinholster* that a petitioner

11  seeking leave for discovery under Rule 6(a) must anticipatorily demonstrate – over and

12  above what the apposite Supreme Court authority in *Bracy* requires – that the discovery

13  sought would not place his claims in "violation" of *Pinholster*.  Nor did *Pinholster* limit the

14  evidence that may be presented on a motion.

15        The Court is not deciding the merits today, whether under deferential review

16  under § 2254(d)(1) or instead on *de novo* review if applicable.  Nor is the Court deciding

17  any potential issues at this juncture as to exhaustion, the possibility of a stay for further

18  exhaustion, procedural default, timeliness and/or relation back.  Figuratively, there are

19  many rivers yet to cross before the Court might determine that the state courts have

20  adjudicated Ground 2 on the merits and further that the decision withstands review

21  under § 2254(d)(1).  If and when the Court gets to that point, then *Pinholster* will limit

22  the Court's consideration of the issue of whether the state court decision withstands

23  review under § 2254(d)(1) to the record before the state court – whether in the prior

24  ///

25  ///

26  ///

27

28        [5]*Id.*, at 2-4.

7

1   proceedings or possibly in further state proceedings addressing any additional facts.[6]

2   But all of the foregoing are issues for another day.

3          Respondents otherwise cite no controlling authority holding that a petitioner

4   seeking leave to conduct habeas discovery must also demonstrate that the discovery

5   sought, ultimately, would not be precluded from consideration by *Pinholster*.  The Ninth

6   Circuit's decision in *Runningeagle v. Ryan*, 686 F.3d 758 (9th Cir. 2012), *cert. filed*, 81

7   U.S.L.W. 3429 (Nov. 15, 2012), does not impose such a requirement.  *Runningeagle*

8   did not discuss the interaction of Rule 6(a) and *Pinholster* at any length.  The panel

9   decision does support the view that a court – on what in *Runningeagle* by then was a

10  case with fully-developed issues pending on appeal – may consider the likely futility of

11  discovery where federal review will be limited under § 2254(d)(1) to the record before

12  the state court.  *See* 686 F.3d at 773-74.  What *Runningeagle* does not establish,

13  however, is an inflexible rule where, earlier in the district court proceedings, a petitioner

14  seeking habeas discovery must establish that the facts sought ultimately would not be

15  precluded from consideration under *Pinholster*.

16         Indeed, the Court need go no further than respondents' own argument to place

17  the certainty of immediate application of  § 2254(d)(1) to Ground 2, on only the record

18  previously developed in the state court, into substantial doubt.  Respondents challenge

19  the exhaustion of Ground 2 in their opposition to petitioner's motion.[7]   The Court

20  perhaps ultimately may hold, as per respondents' argument, that Ground 2 is

21  unexhausted; and petitioner thereafter may establish a basis for a stay to return to state

22  court to exhaust the claim.  In such circumstances, then the record before the state

23

24         [6]The Court notes that Ground 2 or an expanded version thereof potentially could
    be subject to the rule of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), with regard to any

25  claim of procedural default raised in either the federal proceedings or in further state
    proceedings on a possible stay.  In *Martinez*, the Supreme Court held that a petitioner

26  may establish cause to overcome a procedural default if the petitioner was not
    appointed counsel in the initial state post-conviction proceeding to pursue claims of

27  ineffective assistance of trial counsel.  High had no counsel in the state post-conviction
    proceedings, and Ground 2 is a claim of ineffective assistance of trial counsel.

28         [7]Dkt. no. 33, at 4.

1  courts when they ultimately reach the merits will not necessarily exclude any facts

2  developed in the current federal proceedings.

3       The Ninth Circuit specifically approved of such a procedure — where a stay would

4  be entered so that the state courts could consider evidence developed during federal

5  habeas discovery – in *Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011). *Gonzalez* was

6  decided after *Pinholster* and indeed expressly took the rule in *Pinholster* into account in

7  directing such a stay:

8       Under *Pinholster*, we may not consider those later-discovered materials in
        reviewing Gonzales's federal habeas claim.  Because it appears to us that
9       those materials strengthen Gonzales's *Brady* claim to the point that his
        argument would be potentially meritorious — that is, that a reasonable
10      state court might be persuaded to grant relief on that claim — it is not
        appropriate for us to ignore those materials.  We remand that portion of the
11      case to district court with instructions to stay the proceeding in order to
        give Gonzales an opportunity to return to state court and present his claim
12      with the benefit of the materials that were not available and not part of the
        record at the time of the California Supreme Court decision.  By that
13      process, we seek to satisfy the intent of AEDPA, as discussed in
        *Pinholster*, 131 S.Ct. at 1398, that habeas claims of state prisoners be
14      channeled in the first instance to state court.

15  667 F.3d at 972 (footnote omitted).  Given *Gonzalez,* it does not appear that the Ninth

16  Circuit views *Pinholster* either as barring the door to federal habeas discovery or as

17  otherwise standing in the way of the ultimate disposition of claims on a full and fair

18  record.

19       Along these same lines, respondents urge that the Ninth Circuit's decision in

20  *Calderon v. United States District Court (Nicolaus)*, 98 F.3d 1102 (9th Cir. 1996),

21  establishes that "pre-petition discovery for an unexhausted claim is inappropriate."[8]

22  Respondents appear to construe discovery as to any allegedly unexhausted claim to

23  equate to such impermissible "pre-petition" discovery.  They argue that "Ground Two is

24  unexhausted, and High should not be permitted to conduct discovery on an

25  unexhausted claim."[9]  Respondents read  *Calderon* too broadly, and it establishes no

26  _____

27      [8]Dkt. no. 33, at 2.

28      [9]*Id.*, at 4.

1    rule that discovery is precluded whenever a respondent challenges the exhaustion of a

2    claim.  In *Calderon*, the district court granted a motion for issuance of *subpoenas duces*

3    *tecum* before a federal petition had been filed and without any showing, or even

4    explanation, of good cause for the discovery.  The Ninth Circuit granted a petition for a

5    writ of mandamus quashing the subpoenas.  Nothing remotely of the sort is presented

6    here, where petitioner is seeking discovery after petitioner first sought relief in the state

7    courts, he thereafter filed both a *pro se* original petition and a counseled amended

8    petition extensively setting forth, *inter alia*, Ground 2, and he has demonstrated good

9    cause.  *Calderon* – which was decided a year before *Bracy* – does not in any sense

10   establish an overarching rule that exhaustion must be conclusively established as to

11   each claim before discovery is allowed where a petitioner is not seeking pre-petition

12   federal discovery.  The Ninth Circuit's *Gonzalez* decision instead would suggest that

13   there is no such inflexible requirement that it must be conclusively established

14   beforehand that a federal claim is fully exhausted before federal habeas discovery may

15   be allowed.

16       Also along these same lines, respondents contend that petitioner must

17   demonstrate that the discovery would not render Ground 2, if otherwise exhausted,

18   unexhausted by fundamentally altering the claim with the presentation of new facts.

19   Respondents again maintain – incorrectly – that petitioner "is not entitled to discovery

20   on an unexhausted claim."[10]  Whether the facts developed during the discovery will

21   fundamentally alter the claim and render it unexhausted under the standard in *Vasquez*

22   *v. Hillery*, 474 U.S. 254 (1986), remains to be seen.  The prospect that the discovery

23   ///

24   ///

25   ///

26   ///

27   _____

28       [10]Dkt. no. 33, at 3-4.

1    possibly might render the claim unexhausted is not a basis for rejecting the discovery.

2    *Cf. Gonzalez, supra.*[11]

3           In short, the Court will not necessarily decide every potential procedural and

4    merits issue in the case before it permits discovery of facts that may more fully inform its

5    consideration of at least some of those issues later in the case.[12]

6

7    _____

8    [11]The Court notes Judge Reed's analysis harmonizing the rule in *Vasquez, i.e.,*
     that new facts developed in federal court do not render a claim unexhausted unless the
9    new facts fundamentally alter the claim, with the rule in *Pinholster*:

10          The Court concludes . . . that the two rules can be harmonized, as the two
            rules in truth operate independently of one another.  The *Vasquez* rule
11          applies to all federal habeas claims, without regard to whether or not the
            claims later may be subject to deferential review on the merits under §
12          2254(d)(1).  It would make little sense to restrict the rule announced in
            *Vasquez* to the ambit of evidence that may be considered on deferential
13          review under *Pinholster* – based upon alleged inconsistency otherwise
            between the two rules – as to a habeas claim that instead was subject to
14          *de novo* review rather than deferential AEDPA review.  That is, there is no
            inconsistency – practical or otherwise – between the two rules in that
15          instance because the *Pinholster* rule is inapplicable in that context.

16          Thus, resolving the exhaustion issue according to the ambit of evidence
            that may be considered on deferential AEDPA review under *Pinholster* in
17          truth would put the cart before the horse, with *Pinholster* being the cart.
            Analytically, the exhaustion issue should be resolved in the same manner
18          without regard to whatever the scope of factual and legal review ultimately
            later may be on the merits, whether on deferential or *de novo* review.
19          Without a doubt, as a practical matter, in many cases additional factual
            allegations in the federal petition that will not render a claim unexhausted
20          under *Vasquez* nonetheless will be excluded from federal consideration on
            the merits under *Pinholster* as to claims subject to deferential AEDPA
21          review.  However, as to claims instead subject to *de novo* review, the rule
            in *Vasquez* operates both independently from and not inconsistently with
22          the rule in *Pinholster*.  These, again, are independent rules addressed to
            what are often practically interrelated but nonetheless legally distinct
23          issues.

24          The Court accordingly will follow the rule of exhaustion stated in
            *Vasquez* as a still fully viable rule following *Pinholster*.

25   *Moor v. Palmer*, No. 3:10-cv-00401-RCJ-WGC, #27, at 9-10 (D.Nev., July 17, 2012).
     *Accord Lewis v. Nevada*, 2:10-cv-01225-PMP-CWH, #53, at 2-3 (D.Nev., Feb. 4, 2013)
26   (following Judge Reed's analysis in *Moor*).

27          [12]It is long-established Ninth Circuit law that a petitioner need not first establish a
     basis for an evidentiary hearing in order to obtain leave to conduct discovery.  *E.g.,*
28   *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997).

1    The Court therefore will grant the request for discovery directed to the Metro

2    crime lab.

3    **IV.    DISCOVERY FILE**

4          Petitioner seeks production of the discovery file for the case pursuant to a

5    *subpoena duces tecum* directed to the Metro records custodian.  He asserts that his

6    prior counsel were unable to locate the discovery file for the case in their case files.

7          Respondents contend that "[u]nder *Bracy*, to determine whether the petitioner

8    has demonstrated good cause for discovery, the petitioner must establish a number of

9    specific factors, including that the discovery request establishes a logical and direct

10   nexus between the discovery sought and the pending claims."[13] The Court was unable

11   to find this "logical and direct nexus" test in the cited portion of *Bracy*.  Supreme Court

12   precedent does state, however, that "where specific allegations before the court show

13   reason to believe that the petitioner may, if the facts are fully developed, be able to

14   demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the

15   necessary facilities and procedures for an adequate inquiry."  *Harris, supra.*

16         The file sought by the *subpoena duces tecum* refers to numerous items that

17   potentially may pertain, at the very least, to Ground 2, including, *inter alia*: (a) arrest

18   reports, officer reports, crime reports, interrogation notes, detective notes, witness

19   statements, internal memoranda, e-mails, and correspondence (vis-à-vis, *e.g.*, what

20   evidence was collected, when, from whom, under what circumstances as well as the

21   discovery and discussion of errors in Marschner's DNA reports); and (b) chain of

22   custody forms, evidence impound reports, sex assault kits, Sex Assault Nurse Examiner

23   (SANE) reports, laboratory reports, list reports from the evidence vault and on the

24   computer system, release cards, property report forms, and evidence packaging and

25   exhibit labels (all pertaining directly or indirectly to the reliability of the manner in which

26   the sample DNA evidence was handled by Metro and the Metro crime lab up through

27   _____

28         [13]Dkt. no. 33, at 4, citing *Bracy*, 520 U.S. at 909, as authority.

1    the allegedly error-laden testing).  The content of the discovery file further potentially
2    may bear on the extent to which defense counsel was on notice of facts that would
3    prompt competent counsel to retain an expert to challenge the reliability of the DNA
4    evidence in High's case.  The Court thus is satisfied that any "nexus" requirement has
5    been satisfied.

6          The Court additionally notes that petitioner is seeking discovery of material –
7    material that would have been in the criminal discovery file – that is fundamental to any
8    investigation of a federal habeas case in assessing ineffective-assistance claims and
9    which otherwise would be in the files available to federal habeas counsel but for the loss
10   of the records by prior counsel.

11         Respondents further urge that "under *Bracy* the petitioner must demonstrate real
12   and factual evidence to establish the claims for which he seeks discovery have a factual
13   basis and are not merely speculative, and that the request is grounded in specific and
14   demonstrable facts."[14] That is not what *Bracy* holds.  The cited portion of *Bracy* refers to
15   "specific *allegations*" not "real and factual evidence."  As the Court outlined previously
16   herein, a unanimous Supreme Court, in an opinion authored by Chief Justice Rehnquist,
17   overturned a decision denying discovery instead where the petitioner's claim of judicial
18   bias in his particular case was based on "only a theory," where the claim was "not
19   supported by any solid evidence" with regard to the theory, and where the Supreme
20   Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that
21   petitioner will be unable to obtain evidence sufficient to support" the theory that the
22   petitioner sought to pursue in the discovery.  520 U.S. at 908 & 909.  The Court is not
23   persuaded by argument that reads *Bracy* as stating something that the opinion does not
24   state.

25         Finally, as to this discovery request, respondents contend that "the discovery
26   would not have been provided to [prior counsel] by the LVMPD," that "[t]o obtain the

27   _____

28         [14]Dkt. no. 33, at 5, again citing *Bracy*, 520 U.S. at 909, as authority.

1  actual discovery file provided to the proper parties, High must go to the proper party,"
2  and that "[t]he proper party is not the LVMPD."[15] If respondents would prefer that
3  petitioner direct a *subpoena duces tecum* also to the district attorney's office or some
4  other entity, the Court will frame the specifics of the order to permit such discovery
5  and/or interrogatories to determine where a subpoena also might be directed.  In the
6  meantime, the Court is persuaded that the *subpoena duces tecum* directed to the Metro
7  records custodian represents a reasonable and efficient alternative means of
8  reconstructing the discovery file from the criminal case.

9  The Court therefore will grant the request for discovery directed to the Metro
10  records custodian and additionally will allow for the collateral discovery referenced in
11  the preceding paragraph.

12  **V.    CELL PHONE RECORDS**

13  Petitioner seeks a *subpoena duces tecum* to his former cell phone carrier
14  seeking, *inter alia*, records of his incoming and outgoing calls at the relevant time.
15  According to counsel's representation in the reply memorandum, he was advised that
16  the carrier has refused to release the records on High's own request but instead
17  requires a subpoena.

18  Petitioner maintains that, at trial, the alleged victim's mother and aunt testified
19  that they called High repeatedly trying to locate the child without receiving any answer.
20  According to petitioner, the State thereafter emphasized that he intentionally ignored
21  such calls while he allegedly kept the child.  Records of such multiple ignored incoming
22  cell phone calls were not presented at trial, however.

23  Respondents argue not without some force that there currently is no claim before
24  the Court regarding such phone-call evidence.

25  Respondents additionally contend, however, as a general matter that any claims
26  presented based upon newly-presented allegations and/or evidence – including Ground

27  _____

28  [15]Dkt. no. 33, at 5.

2, which is before the Court – would be unexhausted and would require the application of Nevada state procedural bars. One way to overcome a procedural bar is to demonstrate that a fundamental miscarriage of justice would result from a failure to review the claim. In order to demonstrate a fundamental miscarriage of justice, a petitioner must come forward with new reliable evidence that was not presented at the trial that, together with the evidence adduced at trial, demonstrates that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  *Schlup v. Delo*, 513 U.S. 298 (1995).  The evidence need not be newly discovered, but it must be "newly presented."  *See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003).  Production of petitioner's cell phone records may generate such newly-presented evidence seeking to demonstrate alleged actual innocence, by seeking to call into question the reliability of the testimony of the State's witnesses that High was ignoring repeated calls made to determine the alleged victim's whereabouts. The evidence potentially may enable petitioner to demonstrate that he is entitled to relief.

Discovery under Rule 6 is not restricted to potential evidence relevant only to the merits.  This Court frequently has authorized discovery and/or ordered an evidentiary hearing with federal factual development where the factual issues are directed to petitioner's effort to overcome a federal or state procedural bar.  The rule in *Pinholster* of course has no bearing whatsoever on such non-merits factual development, under *Schlup* or otherwise.

Particularly coupled with the remaining discovery authorized herein, the Court is persuaded that petitioner has demonstrated good cause for the additional discovery sought. Respondents clearly will sustain no burden or other prejudice regarding discovery directed to petitioner's own former cell phone carrier.

The Court therefore will grant the request for discovery directed to the cell phone records custodian.

///

1

**VI.    CONCLUSION**

IT IS THEREFORE ORDERED that petitioner's motion for leave to conduct discovery (dkt. no. 32) is GRANTED, as further specified below.

IT IS FURTHER ORDERED that petitioner accordingly is granted leave: (a) to immediately issue *subpoenas duces tecum* as described at dkt. no. 32, at 7-9, to the entities identified therein, and without waiting for responses to the interrogatories referenced in subparagraph (b) *infra*; and (b) to propound interrogatories seeking identification of the current entity, entities, and/or records custodian(s) currently in possession of the discovery file from petitioner's criminal case and/or to direct subpoenas regarding same to such entities.

IT IS FURTHER ORDERED that the certification requirements of Rules 26(c)(1) and 37(a)(1) of the Federal Rules of Civil Procedure and Local Rule LR 26-7 apply to any and all disputes with regard to the discovery allowed herein.  The parties shall confer and endeavor in good faith to resolve any and all discovery disputes in this regard, and they shall seek court intervention only as a last resort.  All applicable discovery sanction provisions of Rules 26 through 37 further shall apply.  Any and all discovery matters in this habeas case, including any emergency discovery disputes under Local Rule LR 26-7(c), will be handled in this case by the Presiding District Judge rather than the Magistrate Judge.

IT IS FURTHER ORDERED that petitioner shall have ninety (90) days from entry of this order to complete the discovery authorized by this order.

IT IS FURTHER ORDERED that petitioner shall have one hundred twenty (120) days from entry of this order to file either (a) an amended petition taking into account the facts developed in the discovery; or (b) a notice that petitioner will not be seeking to amend the petition at that juncture, such that the Court thereupon may complete screening and proceed forward on the pleadings then on file.

///

///

16

1    IT IS FURTHER ORDERED that petitioner's motion for an extension of time (dkt.

2 no. 36) is GRANTED *nunc pro tunc* in connection with the reply (dkt. no. 37) filed.

3

4    ENTERED THIS  29th day of March 2013.

5

6    _____

7    MIRANDA M. DU
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28